**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CATHLEEN M.**

                          **Plaintiff,**                    **24-CV-01161-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND[1]

On March 21, 2022, plaintiff, at the age of 55, protectively filed a claim for benefits under Title II of the Social Security Act, alleging an onset date of July 23, 2021. Dkt. #3, pp. 207-208.

In a Disability Report filed on June 10, 2022, plaintiff alleged she was disabled due to a low back injury. Dkt. #3, pp. 210.[2]

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] In her brief, plaintiff states that she alleged disability due to "impairments of the spine; osteoarthritis of the left hip and right knee; iron deficiency anemia requiring blood transfusions; anxiety disorder; and depression." Dkt. #11-1, p. 2. However, in the disability report submitted to

Plaintiff's claim was denied initially and on reconsideration. Dkt. #3, pp. 70-90. Plaintiff requested a hearing, and a telephonic hearing before Administrative Law Judge ("ALJ") William Weir was held on January 22, 2024. Dkt. #3, pp. 38-69. Plaintiff appeared with her counsel. *Id.*

By way of background, the Court notes several facts of record that were not fully discussed at the hearing. Plaintiff was involved in a motor vehicle crash on July 23, 2021, when another vehicle struck the side of her car when she was backing out of her driveway. Dkt. #3, p. 289. Plaintiff was seen at the emergency room where she reported that, although she had previously injured her lower back, she felt that the car accident made the pain worse. *Id.*

On June 14, 2022, plaintiff underwent back surgery performed by Dr. Zair Fishkin ("Dr. Fishkin") comprising a discectomy, fusion, and placement of instrumentation. Dkt. #3, pp. 425-428, 457-479.

At the hearing, plaintiff testified, upon examination by her counsel, that she had "moderate" benefits from the back surgery and that back pain affects her normal daily activities. Dkt. #3, p. 45. If she cleans the house or does laundry, she is "laid up" the next day. *Id.*

---

the Social Security Administration ("SSA") by her attorney, plaintiff listed only "low back injury" as her claimed disability. Dkt. #3, p. 210. In his decision, the ALJ did consider plaintiff's history of anxiety/depression, left inguinal hernia, iron deficiency anemia, asthma/emphysema, and cervical degenerative disease/spondylosis, but he found those impairments to be non-severe. Dkt. #3, p. 23. Plaintiff does not challenge that finding.

Plaintiff further testified that she had not received medical treatment for her back or any other condition since September 22, 2022, which her counsel confirmed. Dkt. #3, pp. 41-43. When the ALJ noted that the records reflect that plaintiff was improving after her surgery and asked counsel what evidence showed a continuing inability to work, counsel cited only plaintiff's testimony. Dkt. #3, p. 44.

Plaintiff testified that she could stand for about 20 minutes before she feels pain, and she then lies down on a heating pad. Dkt. #3, pp. 45-46. Sitting is the worst position, and she can only sit for 10-15 minutes before needing to get up. Dkt. #3, p. 46. Plaintiff estimated that she lies down for 9-10 hours during the day. *Id.* She further testified that she can stand for about 20-30 minutes. *Id.*

As to lifting, plaintiff testified that she transfers milk from a gallon jug into smaller containers so she does not have to lift the whole gallon. Dkt. #3, p. 47. Plaintiff further testified that she is not in pain every day, rather she has good days and bad days, and the bad days are 1-3 days per week. Dkt. #3, pp. 47-48.

Next, plaintiff testified that she is never comfortable enough to sleep and she wakes up every hour. Dkt. #3, p. 49. This affects her concentration. *Id.*

Plaintiff next testified that she worked for the Board of Education for 34 years, a job which required a lot of sitting. Dkt. #3, pp. 46-47.[3] Plaintiff testified that she had planned to start a catering business after she retired from the School Board, and that the "whole purpose of retiring early" was to fulfill those plans but she does not now see that happening. Dkt. #3, p. 50.

Upon examination by the ALJ, plaintiff testified that she did not see Dr. Fishkin after September 2022 because of transportation problems, and she did not keep a follow-up appointment because she had COVID. Dkt. #3, pp. 51. She testified that she is currently looking for a new primary care provider. Dkt. #3, p. 52.

Next, plaintiff testified that she has a pending lawsuit against the driver who hit her but has not received any kind of settlement. Dkt. #3, p. 53.

Plaintiff testified that she would have no problem going back to work but that she does not think any job would allow her to call in sick once or twice a week when she has bad days. Dkt. #3, p. 54. The ALJ asked plaintiff's counsel if there was any evidence in the record reflecting that plaintiff would be regularly absent from work, and counsel responded that there was only her testimony. Dkt. #3, pp. 54-55.

Plaintiff also testified that Dr. Fishkin did an x-ray and discovered that she had arthritis in her left hip. Dkt. #3, p. 56.

---

[3] In her filings with the SSA, plaintiff listed her position as Senior Account Clerk Typist for the Buffalo School District. Dkt. #3, pp. 211, 233.

The ALJ noted that the state agency reviewers opined that plaintiff could perform sedentary work, and he asked plaintiff's counsel whether plaintiff's claim should be considered one for a closed period from the date of the car accident through her last appointment with Dr. Fishkin. Dkt. #3, p. 58. Plaintiff's counsel rejected this suggestion, stating that, after plaintiff stopped treatment in September 2022, her condition did not improve to the point where she could return to work. Dkt. #3, pp. 58-59.

The ALJ then noted that plaintiff's testimony about her difficulties was not consistent with the fact that she never followed up with Dr. Fishkin for treatment, and that she could have sought other means of transportation. Dkt. #3, p. 59. The ALJ asked plaintiff's counsel if there was any evidence in the record that he should consider regarding this issue, and counsel stated that there was not. *Id.*

Plaintiff next testified that Dr. Fishkin had stated that the appointment that she missed when she had COVID was going to be her last one with him. Dkt. #3, pp. 60-61. She then confirmed that the only medical treatment she has had since then was annual physicals by her primary care provider. Dkt. #3, p. 61.

The ALJ then noted that Dr. Fishkin's treatment note of September 22, 2022 stated that an x-ray showed that the instrumentation placed during plaintiff's surgery was in a satisfactory position, that there were no other significant findings, and that the fusion also appeared satisfactory. Dkt. #3, pp. 61-62. The ALJ asked plaintiff's counsel if there was anything in the record to show that this was not a normal post-operative study or that

plaintiff's back surgery was not successful. Dkt. #3, p. 62. Counsel responded, "There isn't," but stated that that does not mean that plaintiff's symptoms are not ongoing. *Id.*

The ALJ then heard testimony from Christina Boardman, a vocational expert ("VE"). The VE testified that plaintiff's past work at the Board of Education was classified as Accounting Clerk under the Dictionary of Occupational Titles ("DOT"), a sedentary position. Dkt. #3, p. 66.

The ALJ then asked the VE to assume a person with plaintiff's vocational profile who can occasionally lift or carry ten pounds and frequently lift or carry 9.99 pounds; frequently use ramps and stairs; occasionally use ladders, ropes, or scaffolds; occasionally balance and stoop; and frequently kneel, crouch, and crawl. *Id.*

The VE testified that such an individual would be able perform plaintiff's past work. *Id.* She also testified that she has observed the Accounting Clerk job performed and that the ALJ's hypothetical was consistent with her observations, as well as the DOT. Dkt. #3, pp. 66-67.

Plaintiff's counsel asked the VE whether, if the individual required the ability to sit and stand at will and to take a 30-minute break every 30 minutes to lie down on a heating pad, she would be able to perform the Accounting Clerk job or any other job in the national economy. Dkt. #3, p. 67. The VE said she would not because that would

amount to being off-task for more than 15% of the time. *Id.* The VE also testified that absences of once a week and the need to lie down would be disqualifying. *Id.*

On June 4, 2024, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #3, pp. 17-37. The Appeals Council denied plaintiff's request for review on September 23, 2024, Dkt. #3, pp. 5-8, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since July 23, 2021, the alleged onset date; (2) plaintiff has the severe impairment of degenerative disc disease; (3) plaintiff's impairment does not meet or medically equal

any listed impairment; (4) plaintiff has the RFC to perform sedentary work[4] except: she can lift and carry up to 10 pounds occasionally and 9.99 pounds frequently; she can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; and she can occasionally balance and stoop and frequently kneel, crouch, and crawl;  (5) plaintiff is capable of performing her past relevant work as an Accounting Clerk; and (6) plaintiff was not, therefore, disabled within the meaning of the SSA from July 23, 2021, to the date of the ALJ's decision. Dkt. #3, pp. 22-31.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

Plaintiff makes three challenges to the ALJ's decision: (1) the ALJ erred in finding that plaintiff could perform her past relevant work; (2) the ALJ erred in failing to

consider a closed period of disability; and (3) the ALJ failed to properly consider all of plaintiff's medical impairments.

### *Past Relevant Work*

Plaintiff first argues that the ALJ erred in determining that plaintiff could perform her past relevant work as an Accounting Clerk because the record contains inconsistent descriptions of her job requirements. She also argues that the ALJ failed to consider whether plaintiff's past work was that of a "composite" job. Dkt. #11-1, pp. 14-19. The Court disagrees.

The Court of Appeals for the Second Circuit has held that, at the fourth step of the sequential analysis, "the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation omitted). *See also Filer v. Comm'r of Soc. Sec.*, 435 F. Supp.3d 517, 522 (W.D.N.Y. 2020) ("Past relevant work is *either* the specific job a claimant performed *or* the same kind of work as it is customarily performed throughout the economy.") (citation and internal quotation marks omitted) (emphasis added); SSR 82-62, 1982 WL 31386, at *3 ("The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (*either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy*) is generally a sufficient basis for a finding of 'not disabled.'") (emphasis added).

Applicable regulations state that, in determining whether a plaintiff has shown she is unable to perform past relevant work, an ALJ may rely on the expertise of a vocational expert. *See* 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").

Plaintiff argues that the ALJ improperly found that she could perform her past relevant work because her submissions to the SSA conflict regarding the lifting requirements of that job. This is a red herring.

In her Disability Report of June 10, 2022, plaintiff stated that the heaviest weight she lifted in her position with the Buffalo School District was 25 pounds. Dkt. #3, p. 212. However, in her work history report dated July 19, 2022, plaintiff stated that the heaviest weight she was required to lift was less than 10 pounds. Dkt. #3, p. 234.

This conflict is immaterial because, even assuming that plaintiff was required to lift up to 25 pounds in her Accounting Clerk job as she actually performed it at the Buffalo School District—which would be over the lifting limit of sedentary work—the ALJ's step-four finding is still supported by substantial evidence. This is because the ALJ's finding was based on the VE's testimony that plaintiff was able to perform the

~ 12 ~

Accounting Clerk job as it was generally performed in the national economy, as defined in the DOT. Dkt. #3, pp. 66-67.[5]

Such a determination is specifically contemplated by Social Security Ruling 82-61:

> A former job performed [ ] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. *Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."*

SSR 82-61, 1982 WL 31387, at *2 (emphasis added).

Courts thus routinely hold that testimony from a VE is substantial evidence on which an ALJ may properly rely at stage four of the sequential analysis. *See, e.g., Rosario v. Bisignano*, 3:24-CV-1445 (VDO), 2025 WL 2300764, at *9 (D. Conn. Aug. 9, 2025) (ALJ sufficiently inquired into plaintiff's past work as performed in the national economy by presenting hypotheticals to VE based on plaintiff's RFC); *Miriam R. v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-01242-TPK, 2023 WL 3491735, at *4 (W.D.N.Y. May 17, 2023) ("Here, the ALJ was entitled to rely on the testimony of the vocational expert that Plaintiff's job at Mighty Taco fit within the category of cashier II."); *Cheryl L. D. v. Comm'r of Soc. Sec.*, Civ. No. 3:21CV00704(SALM), 2022 WL 2980821, at *15 (D. Conn. July 28, 2022) ("The ALJ made a specific and substantial inquiry into the demands

---

[5] Plaintiff's counsel asked the VE no questions about the lifting requirements of plaintiff's past relevant work.

of plaintiff's past relevant work of Secretary, as it is generally performed in the national economy, when he presented hypotheticals and conducted further examination of the VE.").

Furthermore, plaintiff's argument that the ALJ erred by failing to consider whether plaintiff's past relevant work was a composite job is without merit. Dkt. #11-1, pp. 17-19.

First, plaintiff, who was represented by counsel, did not raise this issue before the ALJ, and it is thus arguably waived. *See Corinna B. v. Comm'r of Soc. Sec.*, 6:23-CV-516 (MJK), 2024 WL 621285, at *7, n.3 (N.D.N.Y. Feb. 14, 2024) (noting that "[i]f the issue [of a composite job] was material to plaintiff's claim, it should have surely been raised before this appeal"); *Brenda C. v. Kijakazi*, No. 3:21-cv-01650 (MPS), 2023 WL 2743290, at *6 (D. Conn. Mar. 31, 2023) (plaintiff waived composite-job argument by failing to raise it before the ALJ).

Second, even if there was no waiver, plaintiff's argument still fails.

"A composite job has significant elements of two or more occupations and, as such, has no counterpart in the DOT." *Charles W. v. Kijakazi*, 1:20-CV-01298-MJR, 2022 WL 2207182, at *8 (W.D.N.Y. June 21, 2022) (citation and internal quotation marks omitted) (cleaned up). "If the ALJ finds that a plaintiff's past relevant work is a composite

~ 14 ~

job, then it cannot suffice at step four as work generally performed in the national economy." *Id.*

However, the mere fact that a claimant's past relevant work involved functional demands greater that those required for the job as performed generally in the national economy does not necessarily "suggest the existence of a composite job." *Corinna B.*, 2024 WL 621285, at *9. *See also Miriam R.*, 2023 WL 3491735, at *4 ("Where there is no vocational testimony to that effect, the fact that a claimant may have performed a job in a somewhat different manner than it is usually performed does not make that job 'composite.'"); *Brenda C.*, 2023 WL 2743290, at *6 (plaintiff's performance of additional duties beyond DOT description of job did not render job a composite job); *Charles W.*, 2022 WL 2207182, at *8 ("Here, there is no suggestion that Plaintiff's past work was a combination of two separate DOT job listings and the VE did not conclude, or even suggest, that the office manager role was a composite job.").

Courts faced with this same argument have noted that it "appears to confuse a composite job with a job 'as actually performed.'" *Noelle v. Comm'r of Soc. Sec.*, 5:15-CV-1301 (GTS/WBC), 2017 WL 9509957, at *7 (N.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 945094 (Mar. 10, 2017).

For these reasons, the ALJ did not err in determining that plaintiff could perform her past relevant work.

***Closed Period of Disability***

Plaintiff next argues that the ALJ erred by failing to consider and then award a closed period of disability benefits from July 23, 2021 to September 22, 2022, the date of plaintiff's last appointment with Dr. Fishkin. Dkt. #11-1, pp. 19-21. This too is without merit.

First, it is not disputed that plaintiff did not request a closed period of disability during the administrative process and that, within the Second Circuit, such failure constitutes a waiver of the argument on appeal. *See Kristen F. v. Comm'r of Soc. Sec.*, 3:20-CV-464 (ATB), 2021 WL 1668933, at *8, n.11 (N.D.N.Y. April 27, 2021) ("Defendant argues that any request for consideration of a closed period has been waived because plaintiff did not assert such a claim before the agency. Defendant's position is supported by recent case law.") (citations omitted); *Melinda J. C. v. Comm'r of Soc. Sec.*, CASE # 19-cv-01618, 2021 WL 766860, at *6 (W.D.N.Y. Feb. 26, 2021) ("However, plaintiff did not request a closed period of disability at any point during the administrative proceedings and [she] is precluded from raising the issue before this Court.") (citations omitted).

Moreover, not only did plaintiff not request a closed period of disability at the administrative level, her attorney rejected any claim to such relief when the ALJ raised the issue. Dkt. #3, pp. 58-59. The ALJ thus accepted plaintiff's position and assumed that plaintiff's symptoms and limitations continued after September 2022, even though there was no medical evidence after that date, and he considered whether plaintiff was disabled

from the date of her car accident until the date of his decision. Dkt. #3, p. 30. Plaintiff thus cannot reasonably assert this argument now as a basis for remand.

Finally, the ALJ recounted medical records which reflected that, after her surgery and *before* September 22, 2022, plaintiff reported significant improvement in her symptoms and independence in all activities of daily living. Dkt. #3, pp. 27-28.

For example, on June 27, 2022—thirteen days after her back surgery— plaintiff reported to a physician assistant at Dr. Fishkin's practice that she had "lingering back pain" which was "uncomfortable but overall tolerable." Dkt. #3, p. 639. She also denied radiation, numbness, or tingling to her lower extremities. *Id.*

On July 20, 2022, plaintiff was seen at Evergreen Health where she reported that her surgery went well; she was doing better; the pain in her back was minimal; and she was following all post-operation instructions and physical therapy and had "no concerns regarding her back." Dkt. #3, p. 599. Such evidence runs counter to the conclusion that plaintiff was under a disability through September 22, 2022. *See Kristen F.*, 2021 WL 1668933, at *8, n.11 (evidence which showed improvement in plaintiff's condition during relevant period precluded closed-period claim).

For all these reasons, plaintiff has not shown that the ALJ erred in not awarding benefits for the alleged closed period.

***Plaintiff's Impairments***

Plaintiff's final argument is that the ALJ failed to consider all of plaintiff's medical impairments and their symptoms, particularly emphasizing an alleged left hip impairment. Dkt. #11-1, pp. 21-25.

While there are some entries in plaintiff's medical records which list "left hip pain" with a separate diagnostic code, these entries generally are made in conjunction with the diagnosis of plaintiff's lumbar pain, which she reported radiated into her lower extremities. For example, records from Dr. Fishkin's office from July and August 2021 list "lumbar back pain with radiculopathy affecting lower extremity," as well as "left hip pain." Dkt. #3, p. 482.

Furthermore, in formulating plaintiff's RFC, the ALJ acknowledged medical records which showed that, between the date of her car accident and her back surgery, plaintiff "complained of increasing back pain *that radiated into her left hip and leg.*" Dkt. #3, p. 26 (emphasis added). He specifically cited a record from January 2022 in which Dr. Fishkin recorded that plaintiff "describes her symptoms as approximately 75% radicular left leg/hip pain and 25% mechanical back pain." *Id.* (citing Dkt. #3, p. 527). In that same record, Dr. Fishkin noted that plaintiff was able to walk with a steady gait and

that an x-ray showed "no obvious bone-on-bone degenerative disc disease of the hips." *Id.*[6]

While Dr. Fishkin noted that plaintiff's hip pain "may require further treatment," Dkt. #3, p. 528, there is no evidence that treatment specific to her hip ever occurred. Indeed, as noted above, plaintiff testified during the administrative hearing that the only medical treatment she received after September 22, 2022 was annual physicals.

In short, the ALJ did consider plaintiff's hip pain as a component of her back problems. Plaintiff's argument that the ALJ failed to consider the cumulative impact of all her impairments is thus, in substance, "merely an invitation to this Court to reweigh the evidence, which is simply not a basis for remand." *Amber G. v. Comm'r of Soc. Sec.*, CASE NO. 6:24-cv-06634, at *8 (W.D.N.Y. Mar. 30, 2026) (citations omitted).

In sum, the Court concludes that the ALJ's decision was supported by substantial evidence and must be upheld.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #12) is granted.

---

[6] The Court notes that if this is the x-ray plaintiff was referring to during the hearing when she testified that Dr. Fishkin did an x-ray and discovered that she had arthritis in her left hip, Dkt. #3, p. 56, then she either misremembered or misrepresented the record.

~ 19 ~

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York

May 6, 2026

 s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

~ 20 ~